**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| Nu Ride Inc., et al., | ) | |
| | ) | Case No. 23-10831 (MFW) |
|     Reorganized Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Nu Ride Inc., | ) | Adv. No. 24-50179 (MFW) |
| | ) | |
|        Plaintiffs, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| Certain Underwriters | ) | |
| at Lloyd's, London Subscribed | ) | |
| to Policy No. B1230FC19215A20 | ) | |
| | ) | Related Adv. Docs 1, 24, 25, |
|        Defendants. | ) | 26, 27, 28 |

**MEMORANDUM OPINION[1]**

Before the Court is the Motion of Certain Underwriters at Lloyd's, London (the "Defendants") to Dismiss the Complaint filed by Nu Ride, Inc. (the "Reorganized Debtor") for lack of subject matter jurisdiction. For the reasons stated below, the Court will grant the Motion.

I. BACKGROUND

Lordstown Motors Corp. and its affiliates (collectively the "Debtors") were manufacturers of a line of electric vehicle (EV)

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

trucks. In 2021, multiple lawsuits were filed by shareholders against the Debtors and their former directors and officers alleging claims of stock manipulation, breach of fiduciary duty in stock sales, misrepresentation, and depreciation of stock (collectively, "the Securities Lawsuits").[2] Additionally, the U.S. Securities and Exchange Commission ("SEC") and the U.S. Department of Justice ("DOJ") commenced investigations of the Debtors (collectively, the "Investigations") regarding statements and representations made by the Debtors in their SEC filings.

On June 27, 2023, the Debtors filed petitions under chapter 11 of the Bankruptcy Code. On March 6, 2024, the Court confirmed the Debtors' Third Modified First Amended Plan of Reorganization.[3] On March 14, 2024, the Plan became effective.[4]

On October 25, 2024, the Reorganized Debtor filed a complaint (the "Complaint") against the Defendants seeking a declaratory judgment that the Defendants are obligated to provide

---

[2] In re Lordstown Motors Corp. Securities Litigation, No. 4:21-cv-00616 (N.D. Ohio) (the "Ohio Securities Class Action"); Thai v. Burns et al., No. 4:21-cv-01267 (N.D. Ohio) (the "Ohio Derivative Action"); In re Lordstown Motors Corp. Stockholder Derivative Litigation, No. 1:21-cv-00604-SB (D. Del.) (the "Delaware Derivative Action"); and In re Lordstown Motors Corp. Stockholder Derivative Litigation, C.A. No. 2021-1049-LWW (Del. Ch. Ct.) (the "Delaware Chancery Derivative Action").

[3] D.I. 1069. References to the docket in the main bankruptcy case are to "D.I. #," while references to the docket in the adversary proceeding are to "Adv. D.I.#."

[4] Adv. D.I. 1 ¶ 18.

defense coverage and fees and costs incurred by the Debtors and the Reorganized Debtor in connection with the Securities Lawsuits and the Investigations under a directors and officers liability insurance policy (the "Policy") covering the period from October 23, 2020, to October 23, 2022.[5] The Reorganized Debtor contends that the Defendants denied coverage on the basis that the conduct underlying the Securities Lawsuits and Investigations either occurred, related back to, or was interrelated with conduct that occurred on dates prior to a Retroactive Date contained in the Policy Exclusion and are thus outside the Policy's coverage period.[6] The Reorganized Debtor asserts that the alleged conduct underlying the Securities Lawsuits and Investigations took place during the applicable coverage period and is not subject to the Retroactive Date Exclusion.[7]

On December 20, 2024, the Defendants filed a Motion to Dismiss the Complaint on the basis that the Court lacks subject matter jurisdiction over the coverage dispute with the Reorganized Debtor because it is neither core nor related to the estate.[8] On January 3, 2025, the Reorganized Debtor filed a

---

[5] Adv. D.I. 1 ¶¶ 1, 25.

[6] Id. at ¶ 4.

[7] Id. at ¶¶ 37-42.

[8] Adv. D.I. 24, 25. Four days earlier, on December 16, 2024, the Defendants had filed an action in the New York State Supreme Court for a declaratory judgment that the Policy does not cover

response contending that the Court does have jurisdiction to decide the Complaint. On January 10, 2025, the Defendants filed a reply. The matter has been fully briefed[9] and is ripe for decision.

II. <u>JURISDICTION</u>

Although the Defendants contest the jurisdiction of the Court to hear this case, the Court does have jurisdiction to determine whether it has subject matter jurisdiction.[10] Therefore, the Court has jurisdiction to address the merits of the Motion to Dismiss.

III. <u>STANDARD OF REVIEW</u>

    A. <u>Rule 12(b)(1)</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction. Such a motion to dismiss challenges

---

the losses alleged by the Reorganized Debtor. Adv. D.I. 25 at 4.

[9] Adv. D.I. 25, 27, 28, 29.

[10] <u>Chicot Cnty. Drainage Dist. v. Baxter State Bank</u>, 308 U.S. 371, 376–77 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute before it). <u>See also</u> <u>BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.)</u>, 437 B.R. 160, 163 (Bankr. D. Del. 2010) (holding that "[t]he Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding.").

the power of the federal court to hear a claim or case.[11]  The issue can be raised in any manner, including on motion of one of the parties or by the court sua sponte.[12]

"If a court lacks subject matter jurisdiction, it is generally barred from taking any action that goes to the merits of the case."[13]  A court may consider the issue of its subject matter jurisdiction at any time and must dismiss an action if it determines that it lacks subject matter jurisdiction.[14]

Motions under Rule 12(b)(1) can challenge subject matter jurisdiction through either a facial or a factual attack.  A "facial attack" contests the sufficiency of the pleadings.[15]  In such a case, the court must accept as true all well-pled factual allegations, viewing them in the light most favorable to the party asserting jurisdiction.[16]  Here, the Defendants raise only

---

[11]    See, e.g., Democracy Rising PA v. Celluci, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009).

[12]    See, e.g., Enterprise Bank v. Eltech, Inc. (In re Eltech, Inc.), 313 B.R. 659, 662 (Bankr. W.D. Pa. 2004).

[13]    Shortt v. Richlands Mall Assocs., Inc., 922 F.2d 836, at *4 (4th Cir. 1990).

[14]    Fed. R. Civ. P. 12(h)(3).  See, e.g., Seagate Tech. (US) Holdings, Inc. v. Global Kato HG, LLC (In re Solyndra, LLC), Bankr. No. 11-12799, Adv. No. 15-50268, 2015 WL 6125246, at *2 (Bankr. D. Del. Oct. 16, 2015).

[15]    See, e.g., Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).

[16]    See, e.g., In re Kaiser Group Int'l, Inc., 399 F.3d 558, 561 (3d Cir. 2005).

a facial attack.

The party invoking the federal court's jurisdiction bears the burden of establishing that the court has jurisdiction.[17] A motion to dismiss for want of subject matter jurisdiction will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim of jurisdiction which would entitle it to relief.[18]

B.  Bankruptcy Court Jurisdiction

A bankruptcy court's jurisdiction extends to four categories of matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.[19]

The first three categories are referred to as 'core' matters,[20] while matters only "related to" a bankruptcy case are non-core.[21] "Related to" jurisdiction grants the bankruptcy court the power to hear cases that are not core matters but only

---

[17]  See, e.g., Solyndra, 2015 WL 6125246, at *2.

[18]  See, e.g., Calhoun v. United States, 475 F. Supp. 1, 2-3 (S.D. Cal. 1977).

[19]  Washington Mut., Inc. v. XL Specialty Ins. (In re Wash. Mut., Inc.), Bankr. No. 08-12229, Adv. No. 12-50422, 2012 WL 4755209, at *2 (Bankr. D. Del. Oct. 4, 2012) (citing In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991)).

[20]  BWI, 437 B.R. at 163-64.

[21]  Id. at 164.  See also In re Resorts Int'l, Inc., 372 F.3d 154, 162 (3d Cir. 2004).

when there is a sufficient nexus between the related proceeding and the bankruptcy case.[22]

"The test for 'related to' jurisdiction is whether the 'outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[23] After confirmation of a chapter 11 plan, however, the test for the bankruptcy court's "related to" jurisdiction is more stringent.[24] "Since there is no longer a bankruptcy estate that can be affected post-confirmation, the bankruptcy court will only exercise jurisdiction where a claim has 'a close nexus to the bankruptcy plan or proceeding' and the matter at issue 'affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement.'"[25]

---

[22] See, e.g., In re Pacor, Inc., 743 F.2d 984, 994 (3d Cir. 1984) ("The jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is not without limit, however, and there is a statutory, and eventually constitutional, limitation to the power of a bankruptcy court. For subject matter jurisdiction to exist, therefore, there must be some nexus between the 'related' civil proceeding and the title 11 case.").

[23] BWI, 437 B.R. at 164 (quoting In re Exide Techs., 544 F.3d 196, 205-06 (3d Cir. 2008)).

[24] AstroPower Liquidating Trust v. Xantrex Tech, Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 323 (Bankr. D. Del. 2005) (citing Resorts, 372 F.3d at 164–67).

[25] BWI, 437 B.R. at 164 (quoting Resorts, 372 F.3d at 168–69).

IV. DISCUSSION

The Defendants argue that, because the Debtors' Plan has been confirmed, the Court only has jurisdiction to hear matters necessary for the administration of the remaining estate. They contend that the Reorganized Debtor's coverage action is not a core matter nor even a "related to" matter because it has no close nexus to the remaining administration of the estate. Therefore, the Defendants argue that the Court lacks jurisdiction over the Reorganized Debtor's Complaint.[26]

The Reorganized Debtor disagrees, contending (1) that the Court expressly retained jurisdiction over this action pursuant to provisions of the Plan and Confirmation Order and (2) that the coverage action has a close nexus to the estate and creditors because it is critical to any recovery by creditors under the Plan.

A. Express Retention of Jurisdiction

The Defendants argue that the Confirmation Order's retention of jurisdiction provision alone is insufficient to confer jurisdiction of this adversary proceeding on the Court. Specifically, they contend that paragraph 101 of the Confirmation Order is merely a general jurisdiction retention provision.[27]

---

[26] Id.

[27] Paragraph 101 of the Confirmation Order provides, in part: The Bankruptcy Court shall retain jurisdiction with respect to all matters arising from or related to the

8

For a Plan to establish "related to" jurisdiction, they argue, it must describe with specificity the causes of actions to be retained and prosecuted in the bankruptcy court.[28]

The Reorganized Debtor argues that the Defendants overlook the language in the Plan, which it contends describes the retained causes of action in sufficient detail. The Reorganized Debtor cites multiple Plan sections which provide for retention of jurisdiction over insurance-related actions among other causes of action.[29] Further, the Reorganized Debtor notes that actions

---

    implementation of this Confirmation order and all matters arising in and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan, or pursuant to section 1142 of the Bankruptcy Code . . . .
D.I. 106 ¶ 101.

[28] See BWI, 437 B.R. at 166 (holding that to retain post-confirmation "related to" jurisdiction, a plan must specifically describe a cause of action and that a plan's "broad" retention of jurisdiction which does not specifically identify the action is insufficient to show it has a close nexus to the bankruptcy proceeding). See also The Fairchild Liquidating Corp. v. State of New York (In re The Fairchild Corp.), 452 B.R. 525, 532 (Bankr. D. Del. 2011) (holding the plan's "broad general retention of jurisdiction provision" insufficient to confer "related to" jurisdiction where it did not reference the specific claims or properties at issue).

[29] Plan at Art. XII.10, 27:
On and after the Effective Date, the Bankruptcy Court shall retain and have jurisdiction . . . <u>To hear and determine any rights, Claims or Causes of Action</u>, including without limitation Claims or Causes of Action <u>identified on the Schedule of Retained Causes of Action</u>, held by, transferred to or accruing to the Post-Effective Date Debtors pursuant to the Bankruptcy Code, including any settlement or compromise thereof [and] . . . <u>To adjudicate any adversary proceedings</u>

9

based on insurance policies are explicitly listed on the Schedule of Retained Causes of Action.[30] Accordingly, the Reorganized Debtor argues that the Plan's retention of jurisdiction provision is evidence of the close nexus between its Complaint and the

---

pending before the Bankruptcy Court on or after the Petition Date <u>or any other disputes relating to any Retained Cause of Action</u> that the Post-Effective Date Debtors may bring thereafter. (Emphasis added).
D.I. 1066.

Plan, Art. I.A.160 states that Retained Causes of Action include:
    any Cause of Action based in whole or in part upon any and all insurance contracts, insurance policies, . . . and similar agreements to which any Debtor or Post-Effective Date Debtor has any rights whatsoever, including the Insurance Policies.
<u>Id.</u>

[30] The Schedule of Retained Causes of Action contained in the Debtors' Second Supplemental Plan Supplement for Third Modified First Amended Joint Chapter 11 Plan includes:
    <u>The Debtors expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence and claims made policies, occurrence and claims made contracts, and similar agreements</u> to which any Debtor or Post-Effective Date Debtor is or was a party or pursuant to which any Debtor or Post-Effective Date Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, <u>including, Causes of Action against current or former</u> insurance carriers, reinsurance carriers, insurance brokers, <u>underwriters</u>, occurrence carriers, third-party claims administrators, or surety bond issuers <u>relating to coverage</u>, indemnification, subrogation, contribution, reimbursement, overpayment of premiums and fees, breach of contract, <u>or any other matters</u>.
D.I. 1042-4 (emphasis added).

bankruptcy case to confer "related to" jurisdiction.[31]

The Defendants contend, however, that even where a Plan specifically retains certain causes of action, that alone is not enough to establish "related to" jurisdiction.[32] Rather, the Defendants argue that the Plan must treat the specific cause of action as an essential feature in order for it to be sufficiently related to the case for the Bankruptcy Court to have jurisdiction over it.[33] They assert that this requirement is not met here because there is no indication that creditors considered the

---

[31] See Wash. Mut., 2012 WL 4755209, at *4 (holding that a "sufficiently close nexus" requires that the plan specifically describe the underlying cause of action and expressly retain jurisdiction to liquidate the claim for creditors' benefit) (citing AstroPower, 335 B.R. at 325). See also EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.), 352 B.R. 731, 735 (Bankr. D. Del. 2006), abrogated on other grounds by In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007) (noting that while a plan's preservation of jurisdiction provision does not by itself confer jurisdiction, it is one factor that "can provide proof of a close nexus between the claims at issue and the bankruptcy case").

[32] Wash. Mut., 2012 WL 4755209, at *5 (granting a motion to dismiss for lack of subject matter jurisdiction and noting that even when a plan clearly and unambiguously reserves jurisdiction for a specific cause of action, the Court will not have post-confirmation jurisdiction unless a substantial nexus is established").

[33] See Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Techs., Inc.), 330 B.R. 512, 525-26 (Bankr. D. Del. 2005), aff'd, 394 B.R. 747 (D. Del. 2008) (holding that while the claims in the Amended Complaint fell within the broad definition of claims retained by the Creditor Trust, "[i]f the litigation is truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan.").

effects of this insurance coverage action when voting on the Plan. In support, the Defendants note that this insurance action is not mentioned in the litigation trust agreement, the Plan does not mandate that the action be brought (but only preserves it), the Policy was assumed only for the benefit of the Reorganized Debtor (not creditors), and the Disclosure Statement warned creditors that the Defendants had denied coverage under the Policy.

The Court finds that the Plan's Schedule of Retained Causes of Action does generally include the Reorganized Debtor's Complaint as one of its "Claims Related to Insurance Policies."[34] However, neither the Plan's Retention of Jurisdiction provisions nor the Schedule of Retained Causes of Action explicitly reference this cause of action (perhaps because the lawsuit had not been filed at the time).

Even if this lawsuit was explicitly described in the Plan and Disclosure Statement, however, that alone does not confer post-confirmation jurisdiction on this Court absent evidence that it has a substantial nexus to the Plan and estate.[35] The

---

[34] See supra note 30.

[35] See, e.g., Resorts, 372 F.3d at 169 (holding that ""[w]here a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization."); BWI, 437 B.R. at 166 ("Plan provisions that purport to preserve the bankruptcy court's jurisdiction are not alone sufficient to establish post-confirmation jurisdiction; instead the court must determine whether a matter affects the

language of the Plan retaining jurisdiction over all retained claims cited by the Reorganized Debtor does not alone establish such a nexus.[36]  Accordingly, without more, the Plan's express retention of jurisdiction is insufficient to confer jurisdiction on this Court over this particular adversary action.

    B.    <u>Close Nexus</u>

The Defendants contend that this adversary proceeding does not fall within "related to" jurisdiction because the insurance coverage dispute does not have a close nexus to the bankruptcy Plan or proceeding.[37]

First, they argue that there is nothing in the Plan or Confirmation Order requiring that the Reorganized Debtor prosecute this (or any) insurance coverage action.  The Plan merely retains those causes of action.

---

interpretation, implementation, consummation, execution, or administration of a confirmed plan.") (internal citations omitted).

[36]    See <u>Insilco</u>, 330 B.R. at 525.

[37]    <u>Logan v. Westchester Fire Ins. Co. (In re PRS Ins. Grp., Inc.)</u>, 445 B.R. 402, 405 (Bankr. D. Del. 2011) (quoting <u>Resorts</u>, 372 F.3d at 168-69) (holding that the trustee's action against insurers was a non-core proceeding and that "[p]ost-confirmation, the bankruptcy court may only exercise [related to] jurisdiction where a claim has 'a close nexus to the bankruptcy plan or proceeding' and the matter at issue 'affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement.'. . . The mere potential to increase the assets of a post-confirmation trust is insufficient to establish the required 'close nexus.'").

Second, while the Defendants concede that the insurance coverage action may indirectly increase creditors' recoveries, they argue that this is insufficient alone to confer "related to" jurisdiction.[38]

Further, the Defendants argue that this adversary action will not result in a greater recovery for the creditors. The Reorganized Debtor's Complaint only seeks reimbursement of defense costs for the benefit of the Reorganized Debtor and its officers and directors; it does not seek recovery of any amounts for third-party creditors.[39] The Defendants contend that this case is thus distinguishable from cases where courts have found "related to" jurisdiction post-confirmation.[40]

---

[38] See Wash. Mut., 2012 WL 4755209, at *3 ("[I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended. . . .") (quoting Resorts, 372 F.3d at 170).

[39] See, e.g., Adv. D.I. 1 ¶ 14 ("Underwriters' refusal [to provide coverage] compelled [the Debtors] to undertake and pay the defense of the Lawsuits and the costs of responding to the investigations, inquiries and demands at its own expense and the litigation fees and costs will continue to be incurred."), ¶ 17 ("[The Reorganized Debtor] accordingly requests that judgment be entered in its favor, granting a declaration that it is entitled to reimbursement of the fees and costs for the defense of the Lawsuits and responding to the investigations, inquiries and demands."), ¶ 36 ("Here, a declaration is sought for defense costs."), p. 16 ("UNDERWRITERS' REFUSAL TO PAY DEFENSE COSTS.").

[40] See Michaels v. World Color Press, Inc. (In re LGI, Inc.), 322 B.R. 95, 102-04 (Bankr. D.N.J. 2005) (retaining jurisdiction where the Plan defined the cause of action as an asset intended

The Reorganized Debtor responds that the Court has "related to" jurisdiction over this action for several reasons. First, it argues that the recoveries under the Plan for creditors and shareholders were premised, in large part, on recoveries under the insurance policies. This, the Reorganized Debtor contends, is evidenced by the fact that (1) the preservation of insurance was a condition precedent to the Plan's effectiveness,[41] (2) the Plan distributions are to be funded in part by the insurance proceeds,[42] and (3) the Reorganized Debtor's ability to challenge

---

to be distributed to creditors); AstroPower, 335 B.R. at 323-25 (retaining jurisdiction where the Plan expressly retained jurisdiction to liquidate the underlying claims for creditors' benefit). The Defendants acknowledge that holders of Class 10 claims are entitled to a portion of certain litigation proceeds, which may include proceeds from the instant insurance coverage action. However, the Defendants argue that this relationship is narrow and insufficient to establish "related to" jurisdiction over the case.

[41]  Plan, Art. X.B.8.:
The Effective Date of the Plan shall not occur unless and until . . . all appropriate notices shall have been given and all other appropriate actions shall have been taken to preserve all applicable Insurance Policies, including any 'tail policy[.]'
D.I. 1066.

[42]  Plan, Art. V.C.:
The Post-Effective Date Debtors shall fund Distributions to Holders of Claims and Interests from all Assets (including, without limitation, Cash generated by or that constitutes the proceeds of assets acquired by the Post-Effective Date Debtors after the Effective Date), which include, but are not limited to . . . (iii) <u>proceeds from Retained Causes of Action and (iv) insurance proceeds</u> received by the Post-Effective Date Debtors.
D.I. 1066 (emphasis added).

the Defendants' denial of coverage was expressly enumerated as a Retained Cause of Action under the Plan.[43]

Further, the Reorganized Debtor argues that this action will directly affect creditors' recoveries.  First, it argues that the Plan limits recoveries on account of any indemnification obligations of the Reorganized Debtor (i.e., to its Directors and Officers) to available insurance.[44]  Second, the Reorganized Debtor argues that the Plan obligates claim holders to exhaust remedies with respect to applicable insurance policies before their claims are paid by the estate.[45]  Third, the Reorganized

---

[43]  See supra note 30.

[44]  Plan, Art. V.M.:
Indemnification Obligations . . . any obligations of the Debtors . . . to indemnify, reimburse, or limit the liability of any Person . . . shall survive confirmation of the Plan . . . provided, however, that, except as otherwise set forth herein or in a Final Order of the Bankruptcy Court, all monetary obligations of any kind or nature whatsoever under this Article V.M shall be limited solely to available insurance coverage and neither the Post-Effective Date Debtors nor any of their respective assets shall be liable for any such obligations in any manner whatsoever.
D.I. 1066 (emphasis added).

[45]  Plan, Art. V.V.:
Unless the Post-Effective Date Debtors agree or the Bankruptcy Court orders otherwise, no distributions under the Plan shall be made on account of any Allowed Section 510(b) Claim, Allowed RIDE Section 510(b) Claim, or on account of any other Allowed Claim or Interest that is payable (to the extent it is payable) pursuant to one of the Debtors' Insurance Policies, until the Holder of such Allowed Claim or Interest has exhausted all remedies with respect to the applicable Insurance Policy, if any.

Debtor argues that the promise of insurance recoveries induced certain parties to settle during the Plan negotiations, led to the withdrawal of certain claims against the estate, and provided a path to confirmation.  Lastly, the Reorganized Debtor asserts that the outcome of this action may sizably increase creditors' recoveries.

The Reorganized Debtor argues that this case is similar to those cases finding post-confirmation "related to" jurisdiction.[46]  Specifically, the Reorganized Debtor argues that the insurance coverage actions are linked to the Debtor's pre-petition losses, the insurance coverage actions were identified as substantial possible sources of recovery for stakeholders under the Plan, and the causes of action were entrusted by the Plan to the Reorganized Debtor to prosecute for the benefit of creditors and shareholders.

The Court disagrees with the Reorganized Debtor's argument because it does not find a sufficiently close nexus between the claims in this adversary action and the Plan.  For example, the

---

D.I. 1066.

[46]   See AstroPower, 335 B.R. at 323-25 (finding that there was "related to" jurisdiction and denying a motion to dismiss for lack of subject matter jurisdiction where the claims at issue were linked to the debtor's pre-petition losses and entrusted to the plaintiff through the Plan for creditors' benefit); LGI, 322 B.R. at 104 (finding a "close nexus" sufficient to exercise jurisdiction where the claims at issues were "both logically linked to the Debtor's pre-petition losses, and entrusted to the Plaintiff via the Plan for the benefit of creditors.").

claims at issue do not affect "the interpretation, implementation, consummation, execution, or administration" of the Plan.[47]  Instead, the claims are simply a means by which some creditors may get an additional recovery, which alone is an insufficient nexus.[48]

Furthermore, although the Court finds that the claims asserted in the Reorganized Debtor's Complaint fit within the general description of Retained Claims Related to Insurance Policies, the evidence does not support a finding that this lawsuit is the lynchpin of the Debtors' Plan.  Instead, this action is only one dispute among numerous other insurance-related matters that are retained in the Plan.[49]  This general reference to Claims Related to Insurance Policies is in sharp contrast to the list of other Retained Causes of Action which go into much greater detail (including names of adversaries and some description of the Debtors' claims).[50]  Further, the Claims Related to Insurance Policies are only one of eight categories of

---

[47]   BWI, 437 B.R. at 164 (quoting Resorts, 372 F.3d at 168-69).

[48]   Resorts, 372 F.3d at 170 ("The malpractice action could result in an increase in the Litigation Trust's finite assets. But the potential to increase assets of the Litigation Trust and its [creditor] beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation.").

[49]   See supra note 30.

[50]   See D.I. 1042-4 at 1-4.

generally described retained claims, in addition to the specifically identified causes of action.[51] If this lawsuit were so crucial to the Debtors' Plan, it would have been given a more prominent place and description in the Plan and Disclosure Statement.[52]

Because the Court finds that there is no close nexus between the claims in the Complaint and the Plan, the Court concludes that it has no subject matter jurisdiction over this coverage action.

It is important to note that the Court's conclusion in no way affects the Reorganized Debtor's (or creditors') right to recover defense costs (or other proceeds) which may be due under the insurance policies. It simply means that any action for a determination of insurance coverage is properly decided by another court.[53]

---

[51]    Id. at 4-6.

[52]    Insilco, 330 B.R. at 525 ("If the litigation is truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan.").

[53]    As noted, the Defendants have brought an action in New York addressing the same subject matter as this adversary. Notably, the Policies provide that New York law governs their interpretation. Adv. D.I. 1, Ex. A at p. 3. See, e.g., Wash. Mut., 2012 WL 4755209, at *4 ("Further, the Plan and Confirmation Order can be interpreted by other courts of competent jurisdiction. '[S]tate courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.'"). See also, Icco v. Sunbrite Cleaners,

V.   CONCLUSION

For the forgoing reasons, the Court will grant the Motion to Dismiss filed by the Defendants.

An appropriate Order is attached.


Dated: June 5, 2025                    BY THE COURT:

*[signature]*

Mary F. Walrath
United States Bankruptcy Judge

---

Inc. (In re Sunbrite Cleaners, Inc.), 284 B.R. 336, 342 (N.D.N.Y. 2002) ("Because contract interpretation is an issue of state law . . . the state courts are perfectly well-suited to interpret the First Amended Plan."); In re Landreth Lumber Co., 393 B.R. 200, 205 (Bankr. S.D. Ill. 2008) ("[T]he state court had concurrent jurisdiction to interpret a provision of the confirmed plan as a matter of contract law . . . ."); Kmart Creditor Trust v. Conaway (In re Kmart Corp.), 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004).